Marlin **FLETCHER**, Plaintiff-Appellee,

v.

**COFFEE COUNTY FARMERS COOPERATIVE**, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

March 30, 1981.

Permission to Appeal Denied by Supreme Court June 29, 1981.

Alec Garland, Manchester, for plaintiff-appellee.

Robert C. Lequire, Manchester, for defendant-appellant.

OPINION

CONNER, Judge.

(Filed with concurrence of participating judges)

This is an appeal by the defendant-appellant from a jury verdict of $8,500.00 for the

plaintiff-appellee[1] for a breach of warranty.

The plaintiff, a farmer, leased 45 acres of land in the spring of 1978 and planted it in corn. Some 10 days after the corn was planted, the plaintiff purchased a herbicide called Lasso from the defendant to control the growth of grass and weeds in the field. The chemical was applied to the field; however, the weeds and grass inhibited the growth of the corn crop.

At the end of the growing season, the plaintiff's total yield from the 45 acres was only 11½ bushels per acre. In prior years plaintiff had yielded an average of 100 bushels of corn per acre.

The plaintiff filed suit alleging a breach of (1) express warranty under § 47–2–313;[2] (2) implied warranty of merchantability under T.C.A. § 47–2–314;[3] and (3) implied warranty of fitness for a particular purpose under T.C.A. § 47–2–315.[4]

At trial, it was the defendant's insistence that the application of Lasso was highly unusual and that normally an additional herbicide called Atrax is recommended and suggested. The defendant claimed that the plaintiff was informed of the practice and chose only the Lasso. The plaintiff asserted that the defendant's representative only recommended the use of Lasso and that he relied on the defendant's expertise in following this advice. The jury decided the controverted issues of fact in favor of the plaintiff.

The defendant assigns error on four grounds: (1) that the verdict is contrary to the law and evidence and that there is no evidence to support the verdict; (2) that the trial judge erred by failing to charge the jury that the plaintiff was under a duty to mitigate his damages; (3) that the trial court erred in failing to charge the jury that an implied warranty can be excluded or modified by course of dealing or course of performance or usage of trade; and (4)

1. Hereafter, the parties will be referred to as at trial.

2. *Express warranties by affirmation, promise, description, sample.—*
   (1) Express warranties by the seller are created as follows:
   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
   (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
   (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

3. *Implied warranty—Merchantability—Usage of trade.—*
   (1) Unless excluded or modified (§ 47–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of

that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
   (2) Goods to be merchantable must be at least such as:
   (a) pass without objection in the trade under the contract description; and
   (b) in the case of fungible goods, are of fair average quality within the description; and
   (c) are fit for the ordinary purposes for which such goods are used; and
   (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
   (e) are adequately contained, packaged, and labeled as the agreement may require; and
   (f) conform to the promises or affirmations of fact made on the container or label if any.
   (3) Unless excluded or modified (§ 47–2–316) other implied warranties may arise from course of dealing or usage of trade.

4. *Implied warranty—Fitness for a particular purpose.—*
   Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

that the court erred in refusing to allow the jury to take the plaintiff's deposition, introduced at trial, to the jury room.

We find the defendant's assignments of error to be without merit and the jury verdict to be proper. Our reasoning follows.

■ First, the law and evidence support the findings of the trial court. The defendant asserts that the plaintiff cannot recover unless he can show that he relied on the defendant's representations, thus making the defendant's statements part of the "basis of the bargain." *See* T.C.A. § 47–2–313(1)(a), *supra*. We agree, however, based on the evidence adduced at trial such "reliance" could easily have been found by the jury.

Specifically, the defendant's chemical representative, Dennis Floyd, testified that the plaintiff said that he only had a grass problem and did not need any kind of herbicide to kill weeds. Further, Mr. Floyd testified that the use of Lasso alone was unusual and he so advised plaintiff. This is in contrast to the plaintiff's testimony that:

I never asked for nothing specific, because I didn't know what to ask for. You know, I'm being honest with you, I didn't know what I was going to do, I didn't know what I was asking for, *I knew I was in trouble, and I never had been in this situation before, so when I talked to Dennis, I asked him . . . well, I told him what I had, and I asked if he could put something on it that would take care of it, and he said he could. Well, I just let it go at that,* I told him . . . that was on Monday when I called him, and I told him I'd meet him out there on Tuesday at lunchtime and go with the guy and show him where the fields were, and when I got there *I asked what he was going to put on it, and he said Lasso, and I said "well, will that take care of it?", and he told me it would. I had faith in the man, he was the chemical man. I had no doubt that what he was putting on it wouldn't work.* (Emphasis supplied).

■ The defendant asserts that the statement "I had no doubt that what he

was putting on it wouldn't work" stands for the proposition that plaintiff admitted that he didn't rely on the advice of defendant. We do not agree with this assertion, and we do not believe the jury did either. To the contrary the statements of the plaintiff in the quoted sequence and elsewhere throughout the record read and construed in their entirety evidence total reliance on the representations of defendant. "I asked him if he could put something on it that would take care of it and he said he could. Well, I just let it go at that. . . . I asked him what he was going to put on it, and he said Lasso and I said, 'well, will that take care of it?', and he told me that it would. I had faith in the man, he was the chemical man." If this testimony was believed by the jury, as it had every right to do, reliance could easily be found. The double negative in the next sentence of the testimony, "I had *no doubt* that what he was putting on it *wouldn't* work" when read in context clearly stands for the proposition that plaintiff, if believed by the jury, thought whatever defendant suggested would work.

Further, if the defendant placed such great emphasis on the last sentence of the plaintiff's answer, why was there no mention of the statement during the course of the trial? The "double negative" sentence was not explored on cross-examination or raised as the subject of a motion for a directed verdict at the end of the plaintiff's proof. We find no indication that the defendant ever questioned the statement until the record was transcribed.

We also note that many Tennesseeans and for that matter citizens of our neighboring states are noted for their colloquialisms including the use of "double negatives" to convey "single negative" meanings. Hearing plaintiff's testimony in its entirety the jury was entitled to so find.

■ The defendant also insists that the plaintiff should not be allowed to recover on the basis of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. In as-

serting that these warranties were excluded, the defendant again relies on the "double negative" statement of the plaintiff. The defendant contends that by this statement the plaintiff knew that the "Lasso" would not work; therefore, the implied warranties were excluded.

Again, the defendant takes plaintiff's statement entirely out of context. If the jury believed the plaintiff's version, the record is fully supportive of the proposition that the plaintiff did not know what type of chemical he needed, and that he was relying completely on the skill and expertise of the defendant's chemical man for some type of herbicide to solve the grass and weed problem in the corn fields. If there is any material evidence to sustain the verdict of the jury, we must do so. T.R.A.P. 13(d).

As to the defendant's second assignment of error, the trial judge did not charge the jury that the plaintiff had a duty to mitigate his damages. We believe his action in this respect was imminently proper as the issue of the mitigation was not raised in the pleadings or at trial.

■ In its third assignment of error the defendant complains that the trial judge did not instruct the jury that the implied warranty could be modified by course of dealing or performance or by usage of trade. The defendant avers that the trial judge's failure to so instruct the jury was error. Again, we disagree.

In the instant case the defendant took a position in diametric opposition to the so-called "usage of the trade" approach. If defendant's proof were believed, the usage of the trade was that Lasso and Atrax were always used together, and plaintiff insisted that the custom and the usage of the trade *not* be followed. Obviously, from its verdict the jury resolved this question of credibility adversely to defendant. To ʌve charged the jury as the defendant now says the court should have done would have been to charge the jury in direct opposition to the defendant's theory at trial, that being the custom or usage of the trade was *not* followed solely due to plaintiff's insistence.

■ Further, the defendant made no objection at trial to the trial judge's instruction despite the fact that the judge specifically asked if counsel had any objection to the jury instructions before the jury retired. The defendant cites T.R.C.P. 51.-02[5] for the proposition that failure to object to any trial instruction is not prejudicial to a party so long as the party assigns the error in his motion for new trial. We disagree.

The Tennessee Supreme Court has taken a contrary interpretation of T.R.C.P. 51.02 than that of the defendant. In *Rule v. Empire Gas Corp.*, 563 S.W.2d 551 (Tenn. 1978), the supreme court held that the trial court did not err in failing to instruct the jury as to contributory negligence or assumption of the risk where the defendants' counsel did not request such an instruction. The court stated:

> ... Rule 51.02 does permit a party to allege error in his motion for a new trial based upon (1) inaccuracy of the charge as given or (2) failure to give a requested appropriate instruction, although no objection or exception in this respect was made at trial; *but we find nothing in the rule which relieves trial counsel of the burden of requesting an instruction to cover alleged omissions in the instructions as given.* (Emphasis supplied).

*Id.* at 553. The issue of contributory negligence in *Rule v. Empire Gas Corp., supra,* was raised in the answer to the complaint, but it was not raised any time at trial.

Thus, when the defendant did not object to the judge's instruction at the time it was given to the jury, he waived the objection and could not raise it on appeal. We believe the rationale of *Rule v. Empire Gas Corp., supra* controls.

---

**5.** *Objection: Failure to Object*
  After the judge has instructed the jury, the parties shall be given opportunity to object, out of hearing the jury, to the content of an instruction given or to failure to give a requested instruction, but failure to make objection shall not prejudice the right of a party to assign the basis of the objection as error in support of a motion for a new trial.

Finally, on the question of whether the plaintiff's deposition should have gone to the jury room, the defendant relies upon T.R.C.P. 32.02[6] which states that the deposition of a party may be used by an adverse party for any purpose. While it is clear under T.R.C.P. 32.02 that a deposition of the adverse party may be used for any purpose *at trial*, that is no *carte blanche* for the proposition that it may be used by the jury in its deliberations.

The court in *Sinard v. Harris*, 2 Higgins 486 (Tenn.App.1911), dealt with written statements made by a party. The trial court refused to allow the jury to take all of the written evidence offered at trial with them when they retired to consider their verdict. The court held that where part of the evidence is oral and part written, it is improper for the written evidence, or any part of it, to be taken into the jury room for use by the jury in its deliberations. *Id.* at 495. In explaining the rationale for its holding, the court said:

> To permit such course would be, as many courts point out, and as noted by the authorities already cited, to permit an undue advantage on behalf of the party who has introduced the writing so taken. As pointed out by our Supreme Court in the excerpt of *Crisman v. McMurray* [23 Pickle 469], hereinbefore set out, it is natural that the jury should give to such writings taken out with it "more probative force than their recollection" of what had been said orally, or, as said in a note found on page 478 of Abbott's Civil Trial Briefs, the reason for withholding such writings from the jury where part of the evidence has been oral is, "that the testimony which they contain if read and re-read by the jury would otherwise have an unfair advantage over the oral testimony by speaking to the jury more than once."

*Id.* at 496. We believe the reasoning regarding "unfair advantage" espoused in *Sinard v. Harris, supra,* is as sound today as it was then.

Further, the trial judge *may, in his discretion*, submit all of the exhibits in a civil case to the jury for consideration during deliberations on their verdict. T.C.A. § 20–9–510.[7] This statute does not impose upon a trial judge in a civil case the absolute duty of submitting the exhibits to the jury during deliberation. Rather, the matter is discretionary with the trial judge. This statute was tested in *Newsom v. Markus*, 588 S.W.2d 883 (Tenn.App.W.S.1979), when the judge refused to give the jury copies of exhibits reflecting the plaintiff's medical expenses. The court, citing T.C.A. § 20–9–510, held that the trial judge did not abuse his discretion in refusing to give the jury the written exhibits. *Id.* at 888.

Based upon the case authority and the statute giving the trial judge broad latitude in determining what goes into the jury room, we cannot hold that the learned trial judge abused his discretion and committed error in refusing to deliver the plaintiff's deposition to the jury.

As a final note, we are constrained to make a general comment applicable to each of the last three assignments of error. The defendant did not make his objections known concerning the jury instructions or the judge's disallowing the plaintiff's deposition to go to the jury room until "the horse was already out of the barn." It is inconsistent with the fairness and finality required in an orderly judicial system to allow appellate litigation to turn on hindsight. The objections and concerns of one

---

6. *Objections to Admissibility*
... (2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director or managing agent, or a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a public or private corporation, partnership or association, governmental agency or individual proprietorship which is a party may be used by an adverse party for any purpose.

7. *Submission of exhibits to jury.—*
The trial judge in civil cases may, *in his discretion*, on motion of either party, upon his own motion, or on request by the jury, submit all exhibits admitted in evidence to the jury for their consideration during deliberations on their verdict. (Emphasis supplied).

party must be timely presented at trial so that the trial court and the adversary party can respond thereto in that forum. Trial by ambush is not encouraged at any level of the modern judicial system.

For the reasons stated herein we affirm the verdict rendered by the jury and approved by the trial court. The cause is remanded to the trial court for such other proceedings as may be necessary. The costs in this appeal are taxed to the defendant.

AFFIRMED AND REMANDED.

TODD, P. J., and LEWIS, J., concur.