IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 13, 2005

## ANTONIO GIBSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-27203      James C. Beasley, Jr., Judge**

---

**No. W2004-02508-CCA-R3-PC  - Filed October 19, 2005**

---

The petitioner, Antonio Gibson, appeals the denial of his petition for post-conviction relief.  The single issue presented for review is whether the petitioner was denied the effective assistance of counsel at trial.  The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

C. Anne Tipton, Memphis, Tennessee, for the appellant, Antonio Gibson.

Paul G. Summers, Attorney General & Reporter; Seth P. Kestner, Assistant Attorney General; and Dennis Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On May 24, 2000, the petitioner was convicted of second degree murder.  The trial court imposed a twenty-three-year sentence.  This court affirmed on direct appeal.  Antonio Gibson v. State, No. W2000-03002-CCA-R3-CD (Tenn. Crim. App., at Jackson, Oct. 19, 2001).  Application for permission to appeal to our supreme court was denied on April 8, 2002.

Our opinion on direct appeal contains a summary of the facts that led to the conviction.  On September 29, 1998, Charles "Jaybird" Bougard, reportedly a drug dealer, was shot to death on the back porch of his Memphis residence.  The victim's death was caused by a single gunshot wound to the chest.  The petitioner, who admitted firing the fatal shot, claimed self-defense as the result of a quarrel over a debt from a drug transaction.  At the time of his death, the victim was armed with a black, .380 caliber weapon and he had $1700 in his pocket.  No empty shells from the victim's weapon were found at the crime scene. Witnesses identified the petitioner and confirmed that only one shot was fired.

On March 12, 2003, the petitioner filed a pro se petition for post-conviction relief alleging, among other things, that he was denied the effective assistance of counsel at trial. After the appointment of counsel, the petition was amended to allege that his trial counsel was ineffective for having failed to object to the jury's review of exhibits out of the presence of the trial court prior to commencement of formal deliberations; for having failed to request a mistrial when the jury began its deliberations prematurely; for having failed to make objections to gestures and signals made by members of the victim's family and courtroom spectators to a state witness; and for having failed to properly impeach a state witness who had been convicted in juvenile court for shoplifting, a crime involving dishonesty.

At the evidentiary hearing, the petitioner, who was represented at trial by Attorney Leslie Ballin and on appeal by Attorney Robert Brooks, testified that he was originally charged with first degree murder, felony murder, and robbery. He confirmed that he had sufficient opportunity to discuss the facts of the case with his trial counsel in preparation for trial and that his trial counsel had contacted all potential witnesses except for a Reverend Turner, who the petitioner had suggested as a character witness. The petitioner acknowledged that his trial counsel had timely supplied him with the state's discovery packets. He stated that he initially chose not to testify but that he had changed his mind when the jurors were allowed to review exhibits during a recess. According to the petitioner, he saw one juror "shaking her head" when the jury returned to the courtroom, as if the jury had already deliberated. He remembered explaining to his lawyer, "I didn't want to testify because my prior record could be used against me" but explaining further that because he felt the jury had already decided on his guilt, he had to testify "regardless of [the jury] considering my prior record." The petitioner testified that he believed that the jurors treated his testimony as irrelevant because they had already made their decision. He also complained that spectators during the trial had communicated answers to a key state witness, David Boxley,[1] during his testimony and that although his trial counsel had raised the issue in a motion for a new trial, he failed to call three individuals who had witnessed the event.

The petitioner contended that his trial counsel failed to object or request precautionary instructions when the jury was allowed to "prematurely deliberate" as they reviewed the exhibits outside of the courtroom. He claimed that his trial counsel should have asked the judge to instruct the jury to disregard the opening statement by the prosecution, which made reference to charges of robbery and felony murder, on both of which the court had entered judgments of acquittal at the close of proof by the time the jury was charged to consider its verdict. The petitioner acknowledged that he had a prior criminal record which included convictions for assault, vandalism, facilitation to commit a robbery, and breaking into a car.

Ebony Graham, the petitioner's sister, testified that she attended the trial. She stated that when David Boxley, the young eyewitness to the shooting, testified that there were people in the audience "[m]aking head gestures" indicating to the witness "to say yes or no" in response to questions. According to Ms. Graham, Boxley "never answered until he saw them move their head

---

[1] Boxley was fifteen years of age at the time of the trial.

in a certain way." Ms. Graham was not called as a witness at the hearing on the motion for a new trial.

Christie Plain, the petitioner's first cousin, and Tunya Robinson, his fiancee, testified to essentially the same thing as Ebony Graham. Ms. Plain recalled that a court officer approached the individuals who were making gestures, apparently warning them against doing so, and the behavior stopped. Ms. Robinson added that she saw a member of the victim's family make a slashing motion across the neck, suggesting an end to Boxley's answer. She claimed to have heard the officer instruct the individuals to quit making hand gestures. Neither of the two witnesses were called to testify at the hearing on the motion for a new trial.

Attorney Ballin, who represented the petitioner at trial, testified that he did not notice any interaction between Boxley and any of the individuals in the audience while Boxley was on the stand. He stated that had he done so, he would have utilized that information during his cross-examination in an effort to discredit Boxley. He conceded that Boxley, an eyewitness to the shooting, was an important witness for the state. He stated that he had been practicing law for over twenty-five years and knew that Officer Vanessa Thomas supervised "a pretty tight courtroom," never allowing any irregularities to "go on very long." Trial counsel recalled that at the hearing on the motion for a new trial, he called Officer Thomas as a witness instead of the three individuals suggested by the petitioner because she had no interest in the outcome of the case and had credibility with the trial judge. He explained that he did not call the additional witnesses because of the cumulative nature of their testimony.

Trial counsel also recalled that five exhibits, all relating to the crime scene, were introduced at trial and passed to the jury to review during a recess. It was his opinion that the procedure was not erroneous. According to trial counsel, he saw nothing that caused him concern when the jury returned to the courtroom after reviewing the crime scene exhibits. Trial counsel recalled that he had prepared the petitioner to testify, which he thought was pivotal with a self-defense claim.

Robert Brooks, who was retained as counsel for the petitioner on appeal, testified that he reviewed the several grounds raised in the motion for a new trial and presented only one on direct appeal. That is, whether the trial court erred in its instructions to the jury on the definition of passion, the defining element between second degree murder and voluntary manslaughter.

At the conclusion of the evidentiary hearing, the post-conviction court determined that during the recess, the jury was permitted to look at a crime scene sketch, an envelope containing a bullet casing, two crime scene photographs of the same bullet, an envelope containing a wallet, and an envelope that contained cash. After reviewing the trial transcript, the post-conviction court determined that the trial court had admonished the jury not to discuss the case during the recesses or breaks and, while there were no admonitions against discussing the exhibits during the particular recess in question, that there was nothing by the nature of the exhibits, nothing in the trial record, and no proof offered at the evidentiary hearing suggesting that the jury had prematurely deliberated or prematurely formed an opinion as to the guilt of the petitioner. The post-conviction court pointed

out that at the time the exhibits were reviewed, Boxley, the primary witness for the state, had not yet testified. It held that because the petitioner would not have been entitled to relief, there was no indication of prejudice by virtue of trial counsel's failure to lodge an objection or seek a mistrial.

The post-conviction court further concluded that whatever impropriety occurred on the part of the victim's family or other spectators within the courtroom was detected by the court officer, who "got on to these individuals and from that point forward stood between them and the witness." The court reviewed the transcript of Boxley's testimony at trial, concluded that trial counsel had conducted an effective cross-examination, specifically questioning him about "some prior communication [with] . . . the victim's family." The post-conviction court specifically accredited the veracity of trial counsel to the extent "that he wasn't aware that something was going on in the courtroom." Regarding the effect of the "courtroom antics of the victim's family," on Mr. Boxley's testimony, the court concluded the following:

> Everybody seems to agree that Mr. Boxley's testimony didn't change, that [it] . . . was the same as what they anticipated. . . . And so . . . I don't know what we can say these people influenced or how they influenced or what it is about this testimony that was changed. . . . But it's apparent to the court that there's nothing that's been presented . . . that says Mr. Boxley's testimony was tainted by these people in the back of the courtroom.

In consequence, the post-conviction court concluded that despite any deficiencies on the part of trial counsel by his failure to make objections, seek a mistrial, or present the ground on a motion for a new trial, the petitioner had failed to establish any prejudice. It was also the opinion of the post-conviction court that the testimony of the three witnesses, Ebony Graham, Christie Plain, and Tunya Robinson, would not have made a difference had they been called as witnesses in a motion for mistrial or in a motion for a new trial.

In this appeal, the petitioner presents only two claims. He first argues that his trial counsel was ineffective for having failed to either move for a mistrial or request special instructions when the jury was allowed to review the exhibits during a recess. He also contends that trial counsel was ineffective for having failed to either request curative instructions, move for a mistrial, or seek a motion for new trial based upon improper communications between spectators at the trial and the witness, Boxley.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim.

App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

The petitioner initially argues that counsel was ineffective for having failed to either object, ask for curative instructions, or move for a mistrial when the trial court declared a recess and allowed the jury to review five exhibits that had just been introduced into evidence by the state. While the petitioner acknowledges that the trial court had previously admonished the jury against premature deliberations, he suggests that because there was no such admonishment during this particular recess, trial counsel should have interceded in an appropriate way, and that his failure to do so resulted in premature jury deliberations.

Prior to July 1, 1995, exhibits were not permitted in the jury room during deliberations in a criminal case. Whether to do so in civil cases was left to the discretion of the trial judge. Fletcher v. Coffee County Farmers Co op., 618 S.W.2d 490, 495 (Tenn. Ct. App. 1981). In 1995, Rule 30.1 of the Tennessee Rules of Criminal Procedure was adopted. The rule provides as follows:

> Upon retiring to consider its verdict, the jury shall take to the jury room all exhibits and writings which have been received in evidence, except depositions, for their examination during deliberations, unless the court for good cause, determines that an exhibit should not be taken to the jury room.

Tenn. R. Crim. P. 30.1 (1995)

The Comments to the 1995 rule provide that the change in the law brought Tennessee in line with practically all other jurisdictions and that while the rule is mandatory, there is an exception when a particular exhibit might be considered a threat to the health and safety of the jurors. Id.

In this case, the trial court explained its decision to provide the jury with the exhibits prior to the recess:

> [T]he jury's got a lot to look at in those envelopes down there, and I don't like to sit here and watch them look at things.
> . . . So ladies and gentlemen of the jury, I'm going to let you take those exhibits back in the jury room. Be comfortable and take your time and look at them. When you get through, we'll just bring you back, okay? . . .

Then, addressing counsel, the trial court explained, "They're going to get them all at the end of the lawsuit anyway."

Initially, the petitioner failed to cite any authority suggesting that it was error for the trial court to have allowed the jury to review the exhibits during a recess. The failure to cite authority in support of an issue may constitute a waiver. Tenn. R. App. P. 27(a)(7). Further, the petitioner has asked this court to infer that the jury prematurely deliberated the issue of guilt as they reviewed the contents of the exhibits outside of the courtroom. There is, however, no evidence that the jury did so. In fact, Attorney Brooks, called as a witness for the petitioner, confirmed that the trial record contained no indication that the jury had any discussions about the contents of the exhibits or how they related to the guilt or innocence of the petitioner at any time before formal deliberations began. Any speculation on the part of the petitioner as to the body language of a particular juror would be an inadequate basis for the court to determine that the jury had engaged in "premature deliberations." In our view, there has been no showing of any deficiency in the performance of trial counsel and no showing of prejudice in result.

Next, the petitioner argues that trial counsel should have either objected, sought curative instructions, or asked for a mistrial when there were improper communications between spectators

at the trial and a state witness, David Boxley.  The post-conviction court, of course, found that there was some improper conduct on the part of spectators but also concluded that the proof at the evidentiary hearing did not establish that the trial testimony of the witness was affected in any way.  The post-conviction court reviewed the trial transcript, complimented the effectiveness of trial counsel's cross-examination of Boxley, and specifically accredited the truthfulness of trial counsel's testimony at the evidentiary hearing.  Moreover, none of the three witnesses were able to testify as to how the content of Boxley's testimony had been altered by the actions of the spectators.  Their only claim was that Boxley appeared to hesitate before answering some of the questions submitted by the state.

Coaching of a witness by a courtroom spectator, of course, is highly improper.  That the court officer took action accredits the petitioner's claim of impropriety but it also suggests that the misconduct was detected and then terminated.  In a post-conviction proceeding, the burden is on the petitioner to establish by clear and convincing evidence that trial counsel was deficient for having failed to take remedial action and that the deficiency adversely affected the results of his trial.  For there to have been prejudice, the petitioner must have demonstrated that Boxley's testimony was influenced by the conduct of the spectator in a manner harmful to the defense.  That is a question of fact.  The post-conviction court, after a meticulous review of the record of the trial and seeing and hearing the witnesses first hand at the evidentiary hearing, rejected the petitioner's claim.  In our view, the evidence does not preponderate against that finding.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE